UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MARTIN HODGE,

           Plaintiff,

  -against-

DR. WLADYSLAW SIDOROWICZ, et al.,

           Defendants.
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 24, 2011

10 Civ. 428 (PAC) (MHD)

ORDER on R&R

HONORABLE PAUL A. CROTTY, United States District Judge:

      Martin Hodge ("Hodge"), an inmate at the Sullivan Correctional Facility ("Sullivan") in the New York State Department of Corrections ("DOC"), brings this action pro se under 42 U.S.C. § 1983 against Dr. Wladyslaw Sidorowicz, Facility Health Services Director; Lynn Lilley, Deputy Superintendent of Administration; Drs. Timothy Whalen and Carl Keonisngmann, Regional Medical Directors at DOC; Dr. Lester Wright, Deputy Commissioner and Chief Medical Officer at DOC; and Pedro Diaz, a Regional Health Services Administrator at DOC (collectively "Defendants"). No state agency, including the DOC, has been named as a defendant. Hodge alleges that, while at Sullivan, Defendants failed to provide him satisfactory medical treatment for his chronic back and vision problems.[1]

      Specifically, Hodge claims that he was: (1) denied adequate pain medication for his back; (2) denied or delayed in receiving certain requested treatments for his medical conditions; (3) denied or delayed in seeing several specialists recommended for his back and eye problems; (4)

---

[1] This is not Hodge's first allegation of inadequate medical treatment during his confinement. He filed a similar suit in July 2010 against his doctors at the Sing Sing Correctional Facility, where he was housed prior to his transfer to Sullivan in 2004. See Hodge v. Perilli, 2010 WL 3932368, at *1 (S.D.N.Y. July 12, 2010). On September 30, 2010, the Court adopted Magistrate Judge Michael Dolinger's Report & Recommendation granting the defendants' motion for summary judgment, finding that Hodge's "case is frivolous and has burdened the scarce resources of this court for too long." Id. at *12. Notwithstanding the similarity in the nature of the claims alleged, the first case concerned only Hodge's incarceration at Sing Sing, while the earliest event discussed in the present action is Hodge's transfer from Sing Sing to Sullivan. (Compl. ¶ 1).

continuously left without medication due to the incompetence and deliberate indifference of prison medical personnel; (5) denied a double mattress in violation of a state court order; (6) caused severe back pain due to inadequate heating in the facility; and (7) denied reasonable accommodations for his poor vision. Hodge makes two additional allegations against the Sullivan nursing staff, none of whom is named in the complaint: First, he claims that, in retaliation for his complaints about back pain and the adequacy of the medical care, the nursing staff attempted to admit him to the prison infirmary against his will. Second, Hodge alleges that the nursing staff, also in retaliation, falsified his medical records in response to his repeated requests for specific medications and treatments after their denial. Hodge seeks an injunction and $850,000.00 in damages.

Hodge primarily claims that the Defendants' failure to provide him with adequate medical care constitutes cruel and unusual punishment in violation of the Eighth Amendment. Defendants move under Fed. R. Civ. P. 12(b) to dismiss because: (1) the complaint is entirely barred by the Eleventh Amendment; (2) Hodge has failed to state a claim under the Eighth Amendment for which relief may be granted; (3) Defendants are protected by qualified immunity; and (4) several of Hodge's claims are barred by the statute of limitations. The Court construes the pro se complaint generously, to assert claims under the Americans with Disabilities Act ("ADA") and Rehabilitation Act, as well, and accordingly also interprets the motions to dismiss to contest the adequacy of these additional claims. See Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (holding that the submissions of a pro se plaintiff are read with "special solicitude" and must be construed liberally and interpreted "to raise the strongest arguments that they suggest").

On February 1, 2010 the Court referred the general pretrial matters and dispositive motions in the case to Magistrate Judge Michael Dolinger. After discovery, Defendants moved to dismiss Hodge's complaint. On November 2, 2010, Magistrate Judge Dolinger issued a Report and Recommendation ("R&R"), advising that the Court (1) dismiss without prejudice Hodge's claims against the Sullivan nursing staff and his sixth claim about the inadequate heating for failing to name the proper defendants; (2) grant Hodge leave to name the proper defendants for these claims within thirty-days of the adoption of the R&R; and (3) dismiss with prejudice the rest of the claims asserted under § 1983, as well as any under the ADA and Rehabilitation Act, for failure to state a claim upon which relief may be granted. Neither party has filed any objections to the R&R. For the reasons set forth below, the Court adopts the R&R in full and dismisses the case.

## FACTS[2]

Dr. Sidorowicz began treating Hodge for chronic vision and back problems in March 2004, when Hodge was transferred from Sing Sing to Sullivan. (Compl. ¶ 1). The vision problems stem from a childhood eye infection and developing glaucoma. The back problems result from a herniated disc and associated nerve damage. Hodge alleges, inter alia, that Dr. Sidorowicz and the other named Defendants denied him adequate vision and back care, including pain management medication and use of a second mattress for his back, which had been ordered following an Article 78 proceeding in state court.

---

[2] Unless otherwise noted, all facts are taken from the R&R.

I. **Hodge's Eye Care**[3]

Hodge has had several, unsuccessful, surgeries to correct his eye condition. In June 2006, while under Dr. Sidorowicz's care, Hodge underwent another surgery performed by Dr. Simmons. Hodge was told to return for a follow-up two weeks later, but was not taken to that appointment until August 2006. This delay incited Hodge's first complaint about Dr. Sidorowicz's care. During this time Hodge was also taken to an eye specialist on multiple occasions to treat his glaucoma. He now claims that on several other occasions he had difficulty receiving the eye drops that these physicians prescribed.

In January 2007, a cornea specialist informed Hodge that he would conduct a cornea transplant once Hodge's glaucoma was under control. Later that month, Dr. Sidorowicz reduced the frequency of Hodge's glaucoma eye drops, causing Hodge to become upset, presumably because he thought it would prolong his glaucoma recovery, delaying or preventing the transplant. A glaucoma specialist then scheduled a surgical procedure for January 2008, but because the laser machine broke, it was not performed until March 2008.

Finally, Hodge alleges that he was repeatedly denied the cornea transplant procedure recommended by the cornea specialist in 2007. Dr. Sidorowicz denied the referral in January 2008, and again later that year after a second specialist referred Hodge for the same procedure. Dr. Sidorowicz ultimately concluded that Hodge "was not a candidate for . . . keratoprosthesis." (Compl. ¶ 40, Pl. Ex. 34). Hodge then wrote letters to Dr. Whalen and Dr. Keonigsmann requesting that they override Dr. Sidorowicz's decision. In October 2009, Diaz responded on behalf of Drs. Whalen and Keonigsmann, denying the request. After receiving Diaz's letter,

---

[3] Hodge has included exhibits with his complaint supporting these alleged denials of treatment for his poor vision. (Compl. ¶ 45, Pl. Ex. 38, 44). They include a reasonable accommodation form from 2007 showing that he requested large print materials, a magnifying glass and a cassette player, and was denied these materials because his medical file indicated that they were not necessary. (R&R at 29; Pl. Ex. 38). The exhibits also show that in 2009 Hodge was provided sport eye protection, large print, magnifiers, a cassette player with headphones, a lamp, sunglasses and a "PIT TV" to accommodate his poor vision. (Id.).

4

Hodge wrote to Brian Fischer, Commissioner of DOC, again seeking an override of Dr. Sidorowicz. In November 2009, Wright responded on Mr. Fischer's behalf, also denying the request in a letter that is essentially identical to Diaz's letter.

## II.     Hodge's Back Treatment

After Hodge suffered a herniated disc in 2001, Dr. Sidorowicz prescribed injections for pain management. The injections were administered annually, starting with Hodge's arrival at Sullivan in 2004 and lasting until January 2007, when Dr. Sidorowicz recommended oral pain medication due to the risk that the injections may have negative side effects on Hodge's eyes. Hodge refused to take the oral medication and continuously requested the injections. The requests were repeatedly denied.

In the meantime, Dr. Sidorowicz signed several medical exemption forms relieving Hodge of his work duties from April to June 2007 due to his back pain.[4] For several weeks, Hodge did not see Dr. Sidorowicz but was treated several times by the prison nursing staff for injuring his back when lifting items. One of the nurses on duty—who is not named in the complaint—recommended that Hodge be admitted to the prison clinic due to his repeated requests for medical attention and fear of reinjuring his back. Hodge refused admission and filed a grievance alleging, as he does in his complaint, that the attempt to admit him was retaliatory.

In December 2008, Hodge underwent surgery for his back pain—a laminectomy and foramintomy—which temporarily controlled the pain. His request for a memory foam mattress, per his surgeon's recommendation, was denied. Hodge also claims that he was denied the physical therapy recommended following this surgery.

In May 2009, Hodge was found guilty of passing his prescription painkillers to another inmate and sent to the Special Housing Unit ("SHU"). He filed several grievances against the

---

[4] The period was originally intended to be only two weeks, but Dr. Sidorowicz extended the period twice.

5

nursing staff, alleging that they refused to administer his medication and forged his medical records. A prison-conducted investigation of these allegations found no evidence of wrongdoing.

While in SHU, Hodge's repeated requests for a second mattress were denied. Although at one time he was permitted use of a second mattress, per the state court order, Dr. Sidorowicz stated that "Mr. Hodge's medical condition did not outweigh the security concerns raised by having two mattresses in the SHU." (R&R at 23-24). Hodge claims that this denial caused him excruciating back pain, as well as a hand injury alleged to have occurred when he collapsed as a result of the back pain. Upon examination, however, his hand showed no signs of injury and Hodge denied the prison's offer to conduct an x-ray. On his release from the SHU, Hodge was issued a second mattress.

Finally, Hodge claims that faulty heating in Sullivan, and his cell in particular, exasperated his back pain. Upon inspection by prison staff, no problem was found. The facility nevertheless issued a recommendation that if the heat in Hodge's cell was not working properly he should be moved.

## PROCEDURAL HISTORY

Hodge filed his complaint with prison authorities on November 30, 2009, and continued to supplement it with additional exhibits until as late as February 15, 2010. The Court treats these exhibits as a motion to amend, which it grants on a finding of no prejudice to Defendants, in order to permit a full resolution of the claims, in the interest of justice. See Fed. R. Civ. P. 15(a)(2).

Defendants move to dismiss under Fed. R. Civ. P. 12(b)(1) or 12(b)(6), on the ground that the Eleventh Amendment strips the Court of its jurisdiction because Defendants are sued in their official capacities; under Fed. R. Civ. P. Rule 12(b)(6), on the ground that Hodge has failed

6

to state a claim for which relief can be granted under the Eighth Amendment or that he has failed to allege that the Defendants are personally responsible for his injuries; and due to qualified immunity. Finally, they argue that the statute of limitations bars all of Hodge's claims before December 4, 2006 and that some claims are barred by collateral estoppel.

## DISCUSSION

A district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). "To accept the report and recommendations of a magistrate, to which no timely objection has been made, a district court need only satisfy that there is no clear error on the face of the record." Wilds v. United Parcel Serv., 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003).

### I.   Eleventh Amendment

Defendants argue that Hodge's claims are for actions taken in their official capacities as employees of the DOC – an agency of the state. Hence, they argue, the Eleventh Amendment bars the suit because Hodge seeks damages in federal court for actions taken by state officials in their official capacities. Defendants further argue that, to the extent that Hodge is suing them personally for complying with state policy regarding inmate medical treatment, such claims must also be deemed asserted "against the state."

For the reasons set forth below, Magistrate Judge Dolinger did not err in concluding that this argument is unfounded. He reasoned that Hodge has not named the DOC as a defendant, rejecting the Defendants' assertion that Hodge is suing a "state agency" for monetary relief; and that Hodge's Memorandum in Opposition clearly seeks relief against all Defendants in their "individual capacities." (R&R at 34).

In enacting § 1983, Congress sought "to give a remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his position." Hafer v.

7

Melo, 502 U.S. 21, 27 (1991) (citing Monroe v. Pape, 365 U.S. 167, 172 (1961)). Thus, § 1983 specifically allows a plaintiff to bring suits to redress alleged deprivations of civil rights by state officials acting "under color of state law." See id. That the alleged deprivation of civil rights in the instant case occurred within the scope of Defendants' employment as state employees, therefore, does not insulate them from liability. Rather, it is the basis for their liability. Accordingly, "to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Kentucky v. Graham, 473 U.S. 159, 166 (1985). As Magistrate Judge Dolinger stated in his Report, "if a claim against a state employee based on such conduct by him were barred by the Eleventh Amendment, then no claims could ever be asserted for constitutional torts by state representatives." (R&R at 33).

The Eleventh Amendment does bar suits for money damages against a state or its agencies under § 1983. It does not, however, bar suits against state officials if the plaintiff intends to sue in their individual capacities. See, e.g., Davis v. New York, 316 F.3d 93, 102 (2d Cir. 2002); Huang v. Johnson, 251 F.3d 65, 70 (2d Cir. 2001) (construing a complaint to manifest the plaintiff's desire to impose personal liability since it expressly named each defendant individually). Because Hodge expressly confirmed his intent to sue individually, it was not clear error to reject Defendants' argument.

### A. Rehabilitation Act Claims

Hodge's Rehabilitation Act claims are not barred by the Eleventh Amendment either. Provided it clearly expresses its intent to do so, Congress may condition a state's receipt of federal funding on the state's waiver of its Eleventh Amendment immunity from suit in federal court. Garcia v. S.U.N.Y. Health Services Center of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001).

Although the Rehabilitation Act contains this type of waiver provision,[5] it is only valid if made knowingly and voluntarily. Id. at 114. "[T]he state, in accepting the funds, [must] believe[] it was actually relinquishing its right to sovereign immunity." Degrafinreid, 417 F. Supp. 2d 403, 414 (S.D.N.Y. 2006).

Magistrate Judge Dolinger did not err in reading Garcia to hold a state's continued acceptance of federal funding sufficient to constitute a "knowing" waiver. See, e.g., Degrafinreid, 417 F. Supp. 2d at 414; Fleming, 502 F. Supp. 2d 324, 334 (S.D.N.Y. 2007).

### B. ADA Claims

Hodge's claims are based in Title II of the ADA, 42 U.S.C § 12132, which prohibits public entities from discriminating against the disabled by failing to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the public entity] can demonstrate that the accommodation would impose an undue hardship . . . ." See 42 U.S.C. § 12112(b)(5)(A); Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206, 213 (1998) (applying Title II to inmates housed in state prisons).

The ADA abrogates sovereign immunity in actions for damages against a state when the allegation also violate the Due Process Clause of the Fourteenth Amendment, which incorporates against the states the Eighth Amendment guarantee against cruel and unusual punishment. United States v. Georgia, 546 U.S. 151, 159 (2006) (citing Louisiana ex rel. Francis v. Resweber, 329 U.S. 459, 463 (1947)). Because Hodge's complaint includes claims against the state for cruel and unusual punishment, the Eleventh Amendment does not bar his ADA claims. (R&R at 37-38).

---

[5] See, 42 U.S.C. § 200d-7 (stating that "[a] State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal Court for a violation of Section 504 of the Rehabilitation Act of 1973.").

**II.    Statute of Limitations**

Defendants seek to dismiss several of Hodge's claims on the ground that they are barred by the statute of limitations. (Def.'s Mem. of Law 21-22). Claims arising under 42 U.S.C. § 1983 are subject to the statute of limitations for personal injury actions in the state in which the action is filed. Wilson v. Garcia, 471 U.S. 261, 275 (1985); see also Owens v. Okure, 488 U.S. 235, 251 (1989).  In New York, then, the statute of limitations is three years. N.Y. C.P.L.R. § 214(5). Because Hodge filed the instant action on November 30, 2009, any claims predating November 30, 2006 are barred.

The cause of action accrues "when the plaintiff knows or has reason to know of the harm." Shomo v. City of New York, 579 F.3d 176, 181 (2d Cir. 2009) (quoting Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir. 1994). An exception is made for claims that are part of a "continuous series of events giv[ing] rise to a cumulative injury." Shomo, 579 F.3d at 182. This exception applies "when a prisoner challenges a series of acts that together comprise an Eighth Amendment claim of deliberate indifference to serious medical needs" provided that the plaintiff also "allege[s] both the existence of an ongoing policy of [deliberate indifference to his or her serious medical needs] and some non-time-barred acts taken in the furtherance of that policy." Id. at 181.

Magistrate Judge Dolinger did not err in recommending that, to the extent that Hodge is claiming to have sustained an injury stemming from an ongoing policy predating November 30, 2006, the policy "regularly disregard[ed] medical recommendations concerning proper treatment," see id. at 184-185, and continued well beyond the statutory period. Although Hodge's injury actually dates back to his 2004 transfer to Sullivan, the majority of his complaints concern his receipt of pain injections, the facility's heating, and other general failures to accommodate his disabilities, all of which are within the period of limitations. Although Hodge's

10

complaints concerning his eye began in July 2006, these complaints continue into the appropriate statutory time period and, therefore, were properly permitted to proceed.

### III. Failure to State a Claim
#### a. Eighth Amendment

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In its review of a 12(b)(6) motion, the Court is limited only to those allegations made in the four corners of the complaint and any outside documents that are essential to it, even those not directly attached, provided that the pleader "relies heavily upon its terms and effect." Chambers v. Time Warner Inc., 282 F.3d 147, 153 (2d Cir. 2002).

"[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. . . . [T]o state a cognizable claim for relief, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). The "deliberate indifference standard embodies both an objective and subjective prong." Hathaway, 99 F.3d at 553. Objectively, "the the prisoner must prove that his medical need was 'a condition of urgency, one that may produce death, degeneration or extreme pain.'" Johnson v. Wright, 412 F.3d 398, 403 (2d Cir. 2005) (quoting Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998)). Subjectively, the charged official must act with a sufficiently culpable state of mind, "entail[ing] something more than negligence, but . . . less than acts or omissions for the very purpose of

11

causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 826 (1994).  Mere disagreement with a physician's chosen course of treatment does not amount to a demonstrable Eighth Amendment claim. Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998).

Magistrate Judge Dolinger assumed without deciding that Hodge has demonstrated the existence of an objectively serious medical condition.  He did not err in concluding that Hodge's allegations, "even liberally construed, simply do not amount to a claim for deliberate indifference, since the denial of an inmate's desired form of treatment is not tantamount to deliberate indifference." (R&R at 47). Magistrate Judge Dolinger observed that Hodge was "regularly seen by Dr. Sidorowicz and the nurses on staff at Sullivan, was repeatedly referred to medical specialists, received numerous prescriptions and evaluations of his medical conditions, and was ultimately given corrective surgery for both his eye problems and back condition." (Id. at 47). Even considering the aggregate impact of the Defendants' conduct, including the delays Hodge complained of on multiple occasions, Magistrate Judge Dolinger still found that such delays "are simply not serious enough to rise to a level of constitutional violation, especially considering that Hodge does not allege that they caused any worsening of his condition." (Id. at 49 (citing Smith v. Carpenter, 316 F.3d 178, 187 (stating that "in most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm.")). Magistrate Judge Dolinger determined that even the most serious delay—the eighteen month delay between his June 2007 back injury and his December 2008 surgery—during which his back worsened, is offset by Hodge's receipt during that time of numerous medical passes from

12

him job, prescription painkillers, physical therapy, and referrals to several specialists. (R&R at 49).

None of the § 1983 allegations asserted against Dr. Sidorowicz under the Eighth Amendment rise to a level of a constitutional violation. This conclusion applies not only to the doctors named in the complaint, but also to the prison's nurses, against whom all allegations must be dismissed, "if for no other reason, because he has not named any of the facility nurses as defendants." (Id. at 54). Additionally, to the extent that Hodge blames the Defendants for the alleged inadequacy of Sullivan's heating system, such claims must also be dismissed because Hodge has failed to allege any actual wrongdoing attributable to the named Defendants. (Compl. ¶ 49, Pl. Ex. 41)

Magistrate Judge Dolinger also did not err in recommending the dismissal of all allegations against Lilley, Whalen, Wright, and Diaz due to their lack of personal involvement in the administration of Hodge's allegedly harmful medical care. (R&R at 55). Additionally, while Dr. Keonigsmann was personally involved in delaying or denying Hodge's back surgery and keratoprosthesis, the Court has already concluded that these allegations did not state a claim for a constitutional violation. (Id. at 57).

Given Hodge's pro se status, Magistrate Judge Dolinger did not err in recommending dismissal of these claims with leave to amend the complaint to name the proper defendants with respect to certain cognizable Eighth Amendment claims. The claims against the Sullivan nursing staff for their alleged denial of necessary medication and alleged retaliatory falsification of medical records, if properly pleaded, could raise valid deliberate indifference claims. See Thomas v. Carter, 284 F.3d 411, 419 (2d Cir. 2002) (stating that a prisoner's allegations that denial of his medication lead to his injuries "may [give rise to] a legitimate claim of deliberate

13

indifference to a serious medical condition."). In addition, the alleged lack of heating in the facility, if properly pleaded, could also raise a valid deliberate indifference claim. Because these claims could feasibly survive a motion to dismiss, therefore, the Court adopts the Magistrate Judge's recommendation of their dismissal without prejudice.

### b. ADA and Rehabilitation Act

Magistrate Judge Dolinger has read Hodge's complaint to assert ADA and Rehabilitation Act claims arising out of an alleged failure to provide reasonable accommodations for his poor vision and a second mattress. In his Report, Magistrate Judge Dolinger recommends dismissing these allegations for failure to state a claim for which relief can be granted. (R&R at 59). For the reasons set forth, the Court adopts the recommendation.

"Because Section 504 of the Rehabilitation Act and the ADA impose identical requirements, we consider these claims in tandem." Rodriguez v. City of New York, 197 F.3d 611, 618 (2d Cir. 1999). A plaintiff must prove three elements to make a prima facie case under Title II of the ADA: (1) that he is a qualified individual with a disability; (2) that he was excluded from participating in a public entity's services, programs or activities or otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his disability. 42 U.S.C. § 12132; see also 29 U.S.C. § 794(a); Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009). A discrimination claim can be based on disparate treatment, disparate impact, or failure to make a reasonable accommodation. Fulton, 591 F.3d at 43.

Magistrate Judge Dolinger did not err in concluding that Hodge fails to satisfy the second element. (R&R at 61). Hodge was in fact given a myriad of accommodations for his poor vision, including sport eye protection, large print, magnifiers, a cassette player with headphones, a lamp and a "PIT TV." (Pl. Ex. 38). Magistrate Judge Dolinger did not err in concluding that Hodge

14

failed to allege that these accommodations were unreasonable or that they denied him access to prison services. (R&R at 61).

### IV.   Qualified Immunity

Because Hodge has failed to allege a constitutional violation under the Eighth Amendment, Magistrate Judge Dolinger correctly concluded that the Court need not address Defendants' qualified immunity defense.

### CONCLUSION

For the foregoing reasons, the Court adopts the Report and Recommendation in full. Defendants' motion to dismiss the claims against the nursing staff with respect to withholding of medication and retaliation, as well as the claim that the prison's inadequate heating exsasperated Hodge's back pain, is granted without prejudice. The Court grants leave to amend the complaint to name the proper defendants for these claims within THIRTY (30) DAYS of this Order. Defendants' motion to dismiss the remainder of Hodge's claims is granted with prejudice. The Clerk of Court is directed to close this case.

Dated: New York, New York
       March 24, 2011

SO ORDERED

*/signature/*

PAUL A. CROTTY
United States District Judge

Copies Mailed To:

Martin Hodge
Reg. # 86-A-8851
Sullivan Correctional Facility
325 River Side Dr.
Fallsburg, NY 12733

Thomas M. Biesty
Office of the New York State Attorney General
120 Broadway
New York, NY 10271

15